RECEIVED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

2020 JUN 22 P 1:00

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| STANTAVIOUS ROBERTS, ) | |
| KENDALL RODGERS, and ) | |
| MICHAEL GAMARRA, ) | **CIVIL ACTION NO.:** 3:20-cv-438 |
| ) | |
| Plaintiffs, ) | **JURY DEMAND** |
| ) | |
| v. ) | |
| ) | |
| MANDO AMERICA ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

---

## COMPLAINT

---

### I.   JURISDICTION AND VENUE

1.     This is a suit to obtain relief for race discrimination, sex/gender discrimination, hostile work environment, retaliation, and unequal pay in employment. This action is under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), The Civil Rights Act of 1991, 42 U.S.C. § 1981, and The Equal Pay Act of 1963, 29 U.S.C § 206(d)(1)and(3).

1

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C.
§§ 1331, 1337,1343 (4) and 28 U.S.C. §§ 2201 and 2202. Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(3). The Equal
Pay Act of 1963, 29 U.S.C. §§ 216(b), 255; and 42 U.S.C. § 1981.

3.      Venue is appropriate in this judicial district under 28 U.S.C. §
1391(b) and 42 U.S.C. §2000e-5(e)(3) because of the unlawful
discriminatory practices alleged in this complaint occurred in Lee County,
Alabama in the Middle District of Alabama.

## II.    PARTIES

4.      Plaintiff, Stantavious Roberts (hereinafter "Plaintiff Roberts"),
is an African-American citizen of the United States and is a resident of
Chambers County, Alabama.

5.      Plaintiff, Kendall Rodgers (hereinafter "Plaintiff Rodgers"), is
an African-American citizen of the United States and is a resident of Macon
County, Alabama.

6.      Plaintiff, Michael Gamarra (hereinafter "Plaintiff Gamarra"), is
an African-American and Latino citizen of the United States and is a
resident of Lee County, Alabama.

7.     Defendant, Mando America Corporation (hereinafter "Mando" or "Defendant") is a foreign corporation doing business in Opelika, Lee County, Alabama.

8.     At all times relevant to this action, Mando America Corporation acted as the Plaintiffs' employer.

### III.   ADMINISTRATIVE PROCEDURES

9.     Plaintiff hereby adopts and realleges paragraphs one (1) through eight (8) herein above as if fully set forth herein.

10.     On June 27, 2019, within 180 days of the acts of discrimination of which Plaintiffs complain, all three (3) Plaintiffs filed separate Charges of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). **(See Exhibit A).**

11.     On March 13, 2020, all three (3) Plaintiffs' Notices of Right to Sue were stamped to be mailed by the EEOC to the Plaintiffs. However, due to delays issued by the global pandemic of COVID-19, Plaintiffs did not receive said Notices of Right to Sue until March 27, 2020. **(See Exhibit B).**

12.     Plaintiffs have filed suit within ninety (90) days of receipt of their Notices of Right to Sue.

13.     All preconditions to suit have been met by the Plaintiffs, and they are entitled to bring this action.

3

## IV. FACTS

14.     Plaintiff adopts and incorporates by reference paragraphs, one (1) through thirteen (13), as if fully set forth herein.

15.     Plaintiff Roberts and Plaintiff Rodgers are both African American males.

16.     Plaintiff Gamarra is an African American and Latino male.

17.     During the Plaintiffs employment several Mando male Supervisors and Managers were having sex with female co-workers, including females in Team Leader positions.

18.     These male Supervisors and Managers were giving female subordinates job raises and/or job promotions if and only if they had sex with them at work.

19.     Furthermore, female employees were allowed to take time off of work when they wanted to and not be subject to discipline.

20.     All Plaintiffs were shown video footage of female Mando employees having sex with male Mando employee Supervisors.

21.     Plaintiffs have witnessed Mando Supervisors: slapping employees on their buttocks; saying offensive sexual jokes to employees; and saying sexual slurs to employees.

4

22.     Mando Supervisors told the Plaintiffs the names of their sexual partners at Mando.

23.     Mr. Leo Thomas (hereafter "Mr. Thomas"), Supervisor, would urge Plaintiffs to have sex with female employees at Mando.

24.     When Plaintiffs refused his urging, Mr. Thomas would always reply by saying, "if it's good for the goose, it's good for the gander."

25.     Plaintiffs would tell Mr. Thomas that they did not want to have sex with company employees.

26.     Mr. Thomas excluded Plaintiffs as being untrustworthy and ousted them out of his inner circle.

27.     Plaintiff Roberts and Plaintiff Rodgers were also told which women they could not have sex with because they were "off limits".

28.     These women were "off limits" because they were already assigned to specific Supervisors or Managers.

29.     In or around January 5, 2015, Plaintiff Roberts was hired by Mando America Corporation in Opelika, Alabama as a Machine Operator 1 on the 3rd shift.

30.     In 2016 Plaintiff Roberts moved from 3rd shift to 2nd shift.

31.     In or around September 9, 2016, Plaintiff Roberts was promoted to a Team Leader position on the 2nd shift.

32.   Once Plaintiff Roberts became a Team Leader, he started getting denied better job opportunities and increases in pay.

33.   Plaintiff Roberts saw women and white men get better jobs than him and increases in pay.

34.   In or around the beginning of 2017, Mr. Michael Hyde (hereafter "Mr. Hyde"), white Manager, and Mr. Steve Hadaway (hereafter "Mr. Hadaway"), white Supervisor, put Plaintiff Roberts into a six (6) week Supervisor College Course.

35.   Plaintiff Roberts completed the course and still did not get an increase in pay or the Supervisor position.

36.   However, Plaintiff Roberts was required to do all of the work of a Supervisor and Team Leader without pay or title of both jobs.

37.   The Supervisor position title remained vacant from 2017 through in or around January 2018.

38.   Starting in or around November of 2017, Plaintiff Roberts complained to Ms. Katie *lnu (last name unknown)* (hereafter "Ms. Katie"), Human Resources, that he was being discriminated against because of his race.

6

39.     In or around November or December of 2017, Plaintiff Roberts applied for the Quality Inspector position which was a pay grade three (3).

40.     Plaintiff Roberts was denied the Quality Inspector job.

41.     Plaintiff Roberts was not given a reason of why he did not get the job.

42.     In 2017, Plaintiff Roberts was also not given an end of the year evaluation.

43.     In or around January 2018, Plaintiff Roberts was moved to the SABA 2 area, demoted to an "Operator 2" position, and his pay was cut by approximately $2.00 an hour.

44.     In or around October of 2018, Plaintiff Roberts complained to Mr. Jermaine Vickers (hereafter "Mr. Vickers"), Human Resources, that he was being discriminated against because of his race.

45.     In or around January of 2018, Plaintiff Roberts grandfather died and he filled out Paid Time Off (PTO) paperwork for bereavement leave to go to his funeral.

46.     Plaintiff Roberts' supervisor approved the PTO, but Mr. Hadaway, Manager, ripped up the paperwork and wrote him up for a discipline.

7

47.   Plaintiff Roberts' Caucasian Supervisors have called him "boy", referred to him as "that's my boy", and told him "don't make me get my whip (or strap) out".

48.   Plaintiff Roberts was offended by all these racist remarks every time they were made.

49.   In or around March 2018, Ms. Toya Hughley (hereafter "Ms. Hughley"), a female Team Lead, boasted to Plaintiff Roberts that she receives more income than what is documented on Mando's pay sheet/records.

50.   It was well known at Mando, that Ms. Hughley was having sex with Mando Supervisors.

51.   Shortly thereafter, in or around March of 2018, Plaintiff Roberts complained to Human Resources that he was being discriminated because of his race and gender.

52.   In or around August of 2018, Plaintiff Roberts applied for Team Lead position in the Brakes department.

53.   Plaintiff Roberts was denied that position as well.

54.   In or around 2019, SABA 2 was shut down and Plaintiff Roberts was forced to move again.

8

55.     Plaintiff Roberts was told by Supervisors, Mr. Thomas, Mr.
Robert Randolph (hereafter "Mr. Randolph"), and Thad Perry (hereafter
"Mr. Perry") that all Team Leads received evaluations, except him because
he did not want to be a part of their Mando sex society.

56.     In or around March 7, 2019, Mr. Vickers told Plaintiff Roberts:
not to go to 1st shift because that was the slave shift and all the "slave
masters" worked on 1st shift; that the 2nd shift was for the "house niggers";
and the 3rd shift was for the "do-boys".

57.     In or around March 16, 2019, Plaintiff Roberts sent a written
complaint to Mr. Vickers, Human Resources, complaining of gender
discrimination, race discrimination, failure to promote, and hostile work
environment.

58.     On March 19, 2019, Mr. Vickers emailed Plaintiff Roberts back
and said he would investigate his claims.

59.     In or around March 21, 2019, Plaintiff Roberts hurt his back at
work.

60.     In or around March 22, 2019 at 12:33 p.m. and before Plaintiff
Roberts shift began, he went to the doctor for his back.

61.     The doctor told Plaintiff Roberts he could not go to back to
work until March 28, 2019.

62.     On March 22, 2019, Plaintiff Roberts immediately submitted his time off request on the company portal at 1:50 p.m.

63.     In or around March 24, 2019, and two (2) days after Plaintiff Roberts submitted his time off request on the company portal, Mr. Thomas denied his time off request.

64.     In or around March 28, 2019, Plaintiff Roberts came back to work and was not allowed on the premises.

65.     In or around March 28, 2019, Plaintiff Roberts was told by Mando that he was terminated on March 27, 2019.

66.     In or around April 11, 2014, Plaintiff Rodgers was hired by Defendant as a Machine Operator 2.

67.     Mr. Hadaway (white male) was Plaintiff Rodgers supervisor.

68.     In 2016 Plaintiff Rodgers, submitted an application for the Team Lead on SABA 2 DSM on 2nd shift.

69.     Plaintiff Rodgers wanted the Team Lead on SABA 2 DSM on 2nd shift because it was a higher paying position.

70.     However, Plaintiff Rodgers was not interviewed for the position, was not given a reason as to why he was not interviewed, and was not awarded the position.

10

71. The Team Lead on SABA 2 DSM on 2nd shift was given to Mr. William Adcock (white male).

72. In or around March 2017, Plaintiff Rodgers complained to Human Resource's Representative, Ms. Katie, for race discrimination, failure to promote, unequal pay, and not receiving a yearly performance evaluation.

73. Ms. Katie informed Plaintiff Rodgers, that both he and Plaintiff Roberts, were the only two (2) employees left off of the evaluation list.

74. In or around September 2017, another Team Lead position became open where Plaintiff Rodgers was serving as the "acting Team Lead".

75. Plaintiff Rodgers applied for the Team Lead position.

76. This time Plaintiff Rodgers was interviewed for the Team Lead position by HR Generalist, Mr. Brandon Yoons.

77. During said interview, Plaintiff Rodgers asked Mr. Yoons why he had not received an interview in June 2016 for the Team Lead position.

78. Mr. Yoons told Plaintiff Rodgers that he should have received an interview because Plaintiff Rodgers work record was bereft of any disciplinary write-ups or coachings.

11

79.    Plaintiff Rodgers got the Team Lead position, but performed both the jobs of Supervisor and Team Leader from approximately September 2017 through January 2019.

80.    However, Plaintiff Rodgers did not receive compensation for performing the two (2) jobs.

81.    Plaintiff Rodgers' Caucasian Supervisors have called him "boy" and referred to him as "that's my boy".

82.    Plaintiff Rodgers was offended by all these racist remarks every time they were made.

83.    In or around March 2018, Ms. Hughley, a female Team Lead, boasted to Plaintiff Rodgers that she receives more income than what is documented on Defendant's pay sheet/records.

84.    In or around February 2019, Plaintiff Rodgers complained to Human Resources Representative, Mr. Jermaine Vickers, that he was being discriminated against because of his race, that Mando subjected him to a hostile work environment, that he was not promoted or evaluated, and he was not receiving adequate compensation.

85.    In or around March 12, 2019, Plaintiff Rodgers received a disciplinary write-up.

86.     In or around March 15, 2019, Plaintiff Rodgers received a disciplinary write-up.

87.     In or around March 20, 2019, Plaintiff Rodgers received a disciplinary write-up.

88.     In or around March 20, 2019, was the first time Plaintiff Rodgers was notified that he no longer had FMLA leave.

89.     Mr. Vickers told Plaintiff Rodgers to re-apply for FMLA leave.

90.     On March 26, 2019, Mando denied FMLA leave to Plaintiff Rodgers.

91.     On March 26, 2019, Plaintiff Rodgers was written up for a discipline.

92.     On March 27, 2019, Plaintiff Rodgers sent a written complaint to Mr. Vickers, Human Resources representative, complaining of gender discrimination, race discrimination, and hostile work environment.

93.     On March 27, 2019, Plaintiff Rodgers was terminated.

94.     On March 27, 2019, both Plaintiff Roberts and Rodgers were terminated by Mando.

95.     In or around June 27, 2014, Plaintiff Gamarra was hired by Mando America Corporation as a Machine Operator 2.

96.     Plaintiff Gamarra is of African American and Latino descent.

13

97.    While Plaintiff Gamarra worked in Suspension on SABA 2 his superiors were Supervisor, Mr. Hadaway (white), and Manager, Mr. Michael Hyde (white) (hereafter "Mr. Hyde").

98.    Mr. Hyde called Plaintiff Gamarra "boy" and "that's his boy".

99.    Plaintiff Gamarra was immediately offended by all these racist remarks every time they were made.

100.    When Plaintiff Gamarra worked in the Brakes department the Supervisor, Mr. Thomas, and the Team Lead has harassed him.

101.    They tell Plaintiff Gamarra to get his "fat ass" to different places and call him a "mother fucker".

102.    Mr. Thomas has even got up in Plaintiff Gamarra's face to fight him and shout profanities.

103.    Mr. Thomas was regularly drunk and carried open liquor bottles at work.

104.    On several occasions, Plaintiff Gamarra has had to help Mr. Thomas because of his drunkenness at work.

105.    On March 15, 2019, Mr. Thomas was so drunk at work that Plaintiff Roberts and Plaintiff Gamarra had to help him find his keys. Mr. Thomas drove home drunk.

106. On March 18, 2019, Mr. Thomas was drunk again at work and threatened to write Plaintiff Gamarra up for missing parts.

107. On several occasions, Plaintiff Gamarra and Plaintiff Roberts witnessed Mr. Thomas sexually touching his subordinate female workers and telling them he wanted to have sex with them.

108. In or around March 27, 2019, Plaintiff Gamarra was told by the 3rd shift Team Lead to stop production because Mando did not have any more parts to continue.

109. Plaintiff Gamarra did as he was instructed by the 3rd shift lead.

110. On that same day, March 27, 2019, the same day Plaintiff Roberts and Plaintiff Rodgers were terminated, Mr. Thomas threatened to write-up Mr. Gamarra for stopping production.

111. In or around March 28, 2019, Plaintiff Gamarra emailed Mr. Vickers in the Human Resource Department complaining about this race and gender/sex discrimination and harassment at Mando.

112. In or around March 28, 2019, Plaintiff Gamarra met with Mr. Vickers in the Human Resources Department about his written complaint.

113. Mr. Vickers said that he would let Plaintiff Gamarra know something in about a week.

15

114. In or around March 28, 2019 later that day, Mr. Thomas wrote Plaintiff Gamarra up on a discipline.

115. In or around March 29, 2019, Mr. Thomas told Plaintiff Gamarra that the white Supervisor, Mr. Eric Slasom, made him write Plaintiff Gamarra up on disciplines.

116. Mr. Thomas promised Plaintiff Gamarra that he could have any job he wanted at Mando if he stayed quiet about his harassment, hostility, and sexual relations with employees.

117. Mr. Thomas told Plaintiff Gamarra that "blacks don't take up for each other like whites do."

118. In or around April 2, 2019, Mando changed the terms and conditions of Plaintiff Gamarra's employment.

## V.    STATEMENT OF PLAINTIFF'S CLAIMS

### COUNT I

### TITLE VII – RACIAL DISCRIMINATION

119. Plaintiff adopts and incorporates by reference paragraphs, one (1) through one hundred eighteen (118), as if fully set forth herein.

120. Plaintiff Roberts and Plaintiff Rodgers are of African-American descent.

121. Plaintiff Gamarra is of African-American and Latino descent.

16

122.    Plaintiffs were routinely called "boy", referred to as "that's my boy", and told "don't make me get my whip (or strap) out" by their white supervisors and other white employees, whereas his white workers were referred to by their given names.

123.    Plaintiffs are members of a protected class.

124.    Plaintiff Roberts and Plaintiff Rodgers were denied promotions and pay because of their African American descent.

125.    Plaintiff Roberts and Plaintiff Rodgers race was a motivating factor in the Defendant's decision to discharge their employment with the company.

126.    Plaintiff Gamarra's race was a motivating factor in the Defendant's decision to materially change in the terms and conditions of his employment.

127.    Defendant acted with malicious intent and/or reckless disregard for the Plaintiffs federally protected rights.

128.    Defendant, upon information and belief, has a habit and/ or practice of discriminating against African-American and Latino employees.

129.    Defendant's illegal discriminatory and adverse actions injured the Plaintiffs.

130.    Plaintiffs were subjected to discriminatory terms and conditions

of employment because of their race.

131.   Defendant condoned and tolerated race discrimination.

132.   Defendant's actions were in violation of Title VII of the "Civil Rights Act of 1964," as amended.

133.   Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by Court.

134.   Plaintiffs have satisfied all administrative prerequisites pursuant to Title VII.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs respectfully requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.      Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of the Plaintiffs as secured by Title VII of the "Civil Rights Act of 1964," as amended, and by the "Civil Rights Act of 1866," as amended.

18

b. Grant Plaintiffs a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII of the "Civil Rights Act of 1964," as amended, and the "Civil Rights Act of 1866," as amended.

c. Grant Plaintiffs an Order requiring the Defendant to make them whole by granting appropriate declaratory relief, back pay, front pay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs; and

d. Plaintiffs pray for such other, further, different or additional relief and benefits as justice may require.

## COUNT II
### TITLE VII – HOSTILE WORK ENVIRONMENT CLAIMS

135. Plaintiff adopts and incorporates by reference paragraphs, one (1) through one hundred thirty-four (134), as if fully set forth herein.

136. Plaintiff Roberts and Plaintiff Rodgers are of African-American descent.

137. Plaintiff Gamarra is of African-American and Latino descent.

138. Plaintiffs were routinely called "boy", referred to as "that's my boy", and told "don't make me get my whip (or strap) out" by their white

supervisors and other white employees, whereas his white co-workers were referred to by their given names.

139. During the Plaintiffs employment several Mando male Supervisors and Managers were having sex with female co-workers, including females in Team Leader positions.

140. These male Supervisors and Managers were giving female subordinates job raises and/or job promotions if and only if they had sex with them at work.

141. Furthermore, female employees were allowed to take time off of work when they wanted to and not be subject to discipline.

142. All Plaintiffs were shown video footage of female Mando employees having sex with male Mando employee Supervisors.

143. Plaintiffs have witnessed Mando Supervisors: slapping employees on their buttocks; saying offensive sexual jokes to employees; and saying sexual slurs to employees.

144. Mando Supervisors told the Plaintiffs the names of their sexual partners at Mando.

145. Mr. Leo Thomas (hereafter "Mr. Thomas"), Supervisor, would urge Plaintiffs to have sex with female employees at Mando.

20

146. When Plaintiffs refused his urging, Mr. Thomas would always reply by saying, "if it's good for the goose, it's good for the gander."

147. Plaintiffs would tell Mr. Thomas that they did not want to have sex with company employees.

148. Mr. Thomas excluded Plaintiffs as being untrustworthy and ousted them out of his inner circle.

149. Plaintiff Roberts and Plaintiff Rodgers were also told which women they could not have sex with because they were "off limits".

150. These women were "off limits" because they were already assigned to specific Supervisors or Managers.

151. Plaintiffs are members of a protected class.

152. Plaintiff Roberts and Plaintiff Rodgers were denied promotions and pay because of their African American descent and gender.

153. Plaintiffs race and gender were motivating factors in the Defendant's decision to discharge Plaintiff Roberts and Plaintiff Rodgers employment and alter the terms and conditions of Plaintiff Gamarra's employment with the company.

154. Plaintiffs supervisors harassed them because of their race and their gender.

155. This harassment created a hostile work environment for

Plaintiffs.

156. Plaintiffs have suffered damages because of racial and sexual hostile work environment the Supervisors and Managers created at Mando.

157. Defendant acted with malicious intent and/or reckless disregard for the Plaintiffs federally protected rights.

158. Defendant, upon information and belief, has a habit and/ or practice of discriminating against African-American and Latino employees.

159. Defendant's illegal discriminatory and adverse actions injured the Plaintiffs.

160. Plaintiffs were subjected to discriminatory terms and conditions of employment because of their race and gender.

161. Defendant condoned and tolerated race and gender discrimination.

162. Defendant's actions were in violation of Title VII of the "Civil Rights Act of 1964," as amended.

163. Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by Court.

164. Plaintiffs have satisfied all administrative prerequisites pursuant to Title VII.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court adopt jurisdiction of this action and award the Plaintiffs the following relief:

a.    Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of the Plaintiffs as secured by Title VII of the "Civil Rights Act of 1964," as amended, and by the "Civil Rights Act of 1866," as amended.

b.    Grant the Plaintiffs a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII of the "Civil Rights Act of 1964," as amended, and the "Civil Rights Act of 1866," as amended.

c.    Grant the Plaintiffs an Order requiring the Defendant to make them whole by granting appropriate declaratory relief, back pay, front pay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs; and

d.    Plaintiffs pray for such other, further, different or additional relief and benefits as justice may require.

23

## COUNT III

## PLAINTIFF'S RETALIATION CLAIMS –
### TITLE VII & 42 U.S.C. § 1981

165.   Plaintiffs adopt and incorporate by reference paragraphs, one (1) through one hundred sixty-four (164), as if fully set forth herein.

166.   Plaintiff Roberts and Plaintiff Rodgers are African-American males.

167.   Plaintiff Gamarra is an African-American and Latino male.

168.   Plaintiffs were routinely called "boy", referred to as "that's my boy", and told "don't make me get my whip (or strap) out" by their white supervisors and other white employees, whereas his white co-workers were referred to by their given names.

169.   Plaintiffs are members of a protected class.

170.   Plaintiff Roberts and Plaintiff Rodgers were denied promotions and pay because of their African American race and gender.

171.   Plaintiff Roberts and Plaintiff Rodgers complained of discrimination to Human Resources about their denial of promotions.

172.   In or around March 16, 2019, Plaintiff Roberts sent a written complaint to Mr. Vickers, Human Resources, complaining of gender

discrimination, race discrimination, failure to promote, and hostile work environment.

173.   In or around March 27, 2019, Plaintiff Roberts was terminated.

174.   In or around February 2019, Plaintiff Rodgers complained to Human Resources Representative, Mr. Jermaine Vickers, that he was being discriminated against because of his race, that Mando subjected him to a hostile work environment, that he was not promoted or evaluated, and he was not receiving adequate compensation.

175.   In or around March 12, 2019, Plaintiff Rodgers received a disciplinary write-up.

176.   In or around March 15, 2019, Plaintiff Rodgers received a disciplinary write-up.

177.   In or around March 20, 2019, Plaintiff Rodgers received a disciplinary write-up.

178.   In or around March 20, 2019, was the first time Plaintiff Rodgers was notified that he no longer had FMLA leave.

179.   Mr. Vickers told Plaintiff Rodgers to re-apply for FMLA leave.

180.   On March 26, 2019, Mando denied FMLA leave to Plaintiff Rodgers.

181.    On March 26, 2019, Plaintiff Rodgers was written up for a discipline.

182.    On March 27, 2019, Plaintiff Rodgers sent a written complaint to Mr. Vickers, Human Resources representative, complaining of gender discrimination, race discrimination, and hostile work environment.

183.    On March 27, 2019, Plaintiff Rodgers was terminated.

184.    In or around March 28, 2019, Plaintiff Gamarra emailed Mr. Vickers in the Human Resource Department complaining about this race/gender/sex discrimination and harassment at Mando.

185.    In or around March 28, 2019 later that day, Mr. Thomas wrote Plaintiff Gamarra up on a discipline.

186.    In or around April 2, 2019, Mando changed the terms and conditions of Plaintiff Gamarra's employment.

187.    Plaintiff Roberts and Plaintiff Rodgers engaged in a protected activity when they complained multiple times to Mando's Human Resources Department about being treated differently and denied promotions based on their race and gender.

188.    Plaintiff Gamarra engaged in a protected activity when he complained to Mando's Human Resources Department about being treated differently because of his race and gender.

26

189.   Plaintiffs complaining about the Defendant's racial hostility and gender discrimination was the but-for cause of the Defendant's retaliation.

190.   Defendant's actions were in violation of Title VII of the "Civil Rights Act of 1964," as amended, and 42 U.S.C. § 1981.

191.   Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by this Court.

192.   Plaintiffs have satisfied all administrative prerequisites pursuant to Title VII and 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs respectfully request that this Court adopt jurisdiction of this action and award Plaintiffs the following relief:

a.   Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of the Plaintiffs as secured by Title VII of the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1866," as amended, and 42 U.S.C. § 1981;

b.   Grant Plaintiffs a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with

27

Defendant or at Defendant's request from violating Title VII of the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1866," as amended, and 42 U.S.C. § 1981;

c.     Grant Plaintiffs an Order requiring the Defendant to make them whole by granting appropriate declaratory relief, back pay, front pay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs; and

d.     Plaintiffs pray for such other, further, different or additional relief and benefits as justice may require.

<strong>COUNT IV</strong>

<strong>42 U.S.C. § 1981 - RACIAL DISCRIMINATION CLAIM</strong>

193.   Plaintiff adopts and incorporates by reference paragraphs, one (1) through one hundred ninety-two (192), as if fully set forth herein.

194.   Plaintiff Roberts and Plaintiff Rodgers are of African-American descent.

195.   Plaintiff Gamarra is of African-American and Latino descent.

196.   Plaintiffs were routinely called "boy", referred to as "that's my boy", and told "don't make me get my whip (or strap) out" by their white supervisors and other white employees, whereas his white workers were referred to by their given names.

28

197.   Plaintiffs are members of a protected class.

198.   Plaintiff Roberts and Plaintiff Rodgers were denied promotions and pay because of their African American descent.

199.   Plaintiff Roberts and Plaintiff Rodgers race was the but-for cause in the Defendant's decision to discharge their employment with the company.

200.   Plaintiff Gamarra's race was the but-for cause in the Defendant's decision to materially change the terms and conditions of his employment.

201.   Defendant acted with malicious intent and/or reckless disregard for the Plaintiffs federally protected rights.

202.   Defendant, upon information and belief, has a habit and/ or practice of discriminating against African-American and Latino employees.

203.   Defendant's illegal discriminatory and adverse actions injured the Plaintiffs.

204.   Plaintiffs were subjected to discriminatory terms and conditions of employment because of their race.

205.   Defendant condoned and tolerated race discrimination.

206.   Defendant's actions were in violation of 42 U.S.C. § 1981.

207.   Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by Court.

29

208.   Plaintiffs have satisfied all administrative prerequisites pursuant to 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs respectfully request that this Court adopt jurisdiction of this action and award Plaintiffs the following relief:

a.   Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of the Plaintiffs as secured by 42 U.S.C. § 1981;

b.   Grant Plaintiffs a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating 42 U.S.C. § 1981;

c.   Grant Plaintiffs an Order requiring the Defendant to make them whole by granting appropriate declaratory relief, back pay, front pay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs; and

d.   Plaintiffs pray for such other, further, different or additional relief and benefits as justice may require.

## COUNT V

## TITLE VII – SEX/GENDER DISCRIMINATION CLAIM

30

209.   Plaintiff adopts and incorporates by reference paragraphs, one (1) through two hundred eight (208), as if fully set forth herein.

210.   Plaintiffs were harassed and discriminated against by the Supervisors and Managers who were having sex with and promoting female Team Leads.

211.   During the Plaintiffs employment several Mando male Supervisors and Managers were having sex with female co-workers, including females in Team Leader positions.

212.   These male Supervisors and Managers were giving female subordinates job raises and/or job promotions if and only if they had sex with them at work.

213.   Furthermore, female employees were allowed to take time off of work when they wanted to and not be subject to discipline.

214.   Plaintiffs were shown video footage of female Mando employees having sex with male Mando employee Supervisors.

215.   Plaintiffs have witnessed Mando Supervisors: slapping employees on their buttocks; saying offensive sexual jokes to employees; and saying sexual slurs to employees.

216.   Mando Supervisors told the Plaintiffs the names of their sexual partners at Mando.

31

217. Mr. Thomas, Supervisor, would urge Plaintiffs to have sex with female employees at Mando.

218. When Plaintiffs refused his urging, Mr. Thomas would always reply by saying, "if it's good for the goose, it's good for the gander."

219. Plaintiffs would tell Mr. Thomas that they did not want to have sex with company employees.

220. Mr. Thomas excluded Plaintiffs as being untrustworthy and ousted them out of his inner circle.

221. Plaintiff Roberts and Plaintiff Rodgers were also told which women they could not have sex with because they were "off limits".

222. These women were "off limits" because they were already assigned to specific Supervisors or Managers.

223. The conduct and actions of Defendant violates Title VII because the terms, conditions, and benefits of Plaintiff's employment were adversely affected based upon their sex/gender.

224. Plaintiff Roberts and Plaintiff Rodgers membership in a protected class was a motivating factor in Defendant's decision to pay them less that similarly situated female employees and not to promote them to Team Lead and Supervisor roles.

32

225.   As a proximate result of Defendant's unlawful discrimination, Plaintiffs have suffered financial loss, loss of career advancement, shame, humiliation, emotional distress and trauma.

226.   Plaintiff Roberts and Plaintiff Rodgers were good employees and were qualified to hold Team Lead and Supervisor roles with the Defendant.

227.   Defendant subjected Plaintiffs to adverse treatment and gender discrimination with respect to the terms and conditions of their employment.

228.   Plaintiffs gender was a substantial or motivating factor in Defendant's unlawful treatment and adverse treatment of Plaintiffs.

229.   Defendant acted with malicious intent and/or reckless disregard for Plaintiffs' federally protected rights.

230.   Defendant, upon information and belief, has a habit and/or practice of discriminating against male employees because of sex.

231.   Defendant's illegal discriminatory and adverse actions injured Plaintiffs.

232.   Plaintiffs were subjected to discriminatory terms and conditions of employment because of sex.

33

233.   Defendant condoned and tolerated gender discrimination, and Defendant's actions were in violation of Title VII of the "Civil Rights Act of 1964," as amended.

234.   Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by this Court.

235.   Plaintiffs have satisfied all administrative prerequisites pursuant to Title VII.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs request that this Court adopt jurisdiction of this action and award Plaintiffs the following relief:

a       Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiffs as secured by Title VII of the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991," and;

b       Grant Plaintiffs a permanent injunction enjoining Defendant, its Agents Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII of the "Civil Rights of 1964," as amended by the "Civil Rights Act of 1991," and;

34

c    Grant Plaintiffs an Order requiring Defendant to make them whole by granting appropriate declaratory relief, back pay, front pay, punitive damages, compensatory damages (including damages for mental anguish), interest, attorney fees, expenses, costs; and

d    Plaintiffs pray for such other, further, different or additional relief and benefits as justice may require.

**COUNT VI**

**THE EQUAL PAY ACT - 29 U.S.C. § 206(d)**
**UNEQUAL PAY CLAIM**

236.    Plaintiff adopts and incorporates by reference paragraphs, one (1) through two hundred thirty-five (235), as if fully set forth herein.

237.    Plaintiff Roberts and Plaintiff Rodgers performed substantially the same work as the Defendant's female Team Leads, Ms. Toya Hughley and Ms. Sabrina Nelson.

238.    Plaintiff Roberts and Plaintiff Rodgers worked in the same establishment as the Defendant's female Team Leads or similarly titled and situated employees, Ms. Toya Hughley and Ms. Sabrina Nelson.

239.    Plaintiff Roberts and Plaintiff Rodgers performed the same jobs as the Defendant's female Team Leads or similarly titled and situated employees, Ms. Toya Hughley and Ms. Sabrina Nelson, that require

35

substantially equal skill, effort, and responsibility and which are performed under similar working conditions.

240.   At the time the Defendant hired Ms. Toya Hughley and Ms. Sabrina Nelson and began paying them a higher wage, the Defendant knew that the Equal Pay Act required that men and women in the same workplace be given equal pay for equal work.

241.   Defendant also knew that Ms. Toya Hughley and Ms. Sabrina Nelson did not have Plaintiff Roberts and Plaintiff Rodgers same work experience.

242.   Defendant's violation of the Equal Pay Act was willful and intentional.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that this Court adopt jurisdiction of this action and award Plaintiffs the following relief:

a.      Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiffs as secured by The Equal Pay Act, 29 U.S.C. § 206(d);

b.      Grant Plaintiffs a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with

Defendant or at Defendant's request from violating The Equal Pay Act 29 U.S.C. § 206(d);

      c.     Grant Plaintiffs an Order requiring Defendant to make them whole by granting appropriate declaratory relief, back pay, punitive damages, compensatory damages (including damages for mental anguish), interest, attorney fees, expenses, costs; and

      d.     Plaintiffs pray for such other, further, different or additional relief and benefits as justice may require.

**PLAINTIFF HEREBY REQUESTS TRIAL BY STRUCK JURY**

Blake C. Edwards
State Bar ID No: ASB-5200-T60B

Nicole D. Edwards
State Bar ID No: ASB-4832-B19D
*Attorneys for Plaintiffs*

**OF COUNSEL:**
EDWARDS & EDWARDS
ATTORNEYS AND MEDIATORS, PLLC
3603 Pine Lane SE, Suite C
Bessemer, Alabama 35022
Tel: (205) 549-1379
Fax: (205) 719 -4033
E-mail: nicole@edwardsattys.com
        blake@ edwardsattys.com

**PLAINTIFFS ADDRESS:**

Mr. Stantavious Roberts
Mr. Kendall Roberts
Mr. Michael Gammara
c/o EDWARDS & EDWARDS ATTORNEYS AND MEDIATORS, PLLC
3603 Pine Lane SE, Suite C
Bessemer, Alabama 35022


**PLEASE SERVE DEFENDANT AT THE FOLLOWING ADDRESS:**

Mando America Corporation
4201 North Park Drive
Opelika, Alabama 36801